GEORGIA PACIFIC CORP. *v.* B. BRYAN LAREY,
COMMISSIONER OF REVENUES

5-4188                                          413 S. W. 2d 868

Opinion delivered April 24, 1967

*Griffin Smith*, for appellant.

*Lyle Williams* and *Tom Tanner*, for appellee.

LYLE BROWN, Justice. The Arkansas Commissioner of Revenues assessed a sales tax against Georgia Pacific Corporation on materials manufactured in Arkansas by Georgia Pacific. The materials were sold; they were withdrawn from stock and utilized in Georgia Pacific's facility at Crossett, Arkansas. Secondly, the commissioner assessed an Arkansas Compensating (Use) Tax against Georgia Pacific on products which Georgia Pacific manufactured without the State and which were shipped to Crossett and likewise utilized in the Crossett facility. The trial court upheld both assessments.

_____

[1]On motion of B. Bryan Larey, presently Commissioner of Revenues, he is substituted as appellee in lieu of his predecessor, Doris McCastlain.

*Sales Tax.* The Arkansas Gross Receipts Act of 1941 (Sales Tax) is basically a tax on gross proceeds, or gross receipts, derived from the sale of tangible personal property and certain specified services. However, the Legislature enlarged the term "gross proceeds" or "gross receipts" to include stock withdrawals for personal use. Section 2 (d) of Act 386 reads as follows:

"(d) [Standard definition of 'gross proceeds' or 'gross receipts.' The term 'gross proceeds' or 'gross receipts' shall include the value of any goods, wares, merchandise, or property withdrawn or used from the established business or from the stock in trade of the established reserves for consumption or use in such businesses or by any other person." Ark. Stat. Ann. §§ 84-1902 (Repl. 1960).

With respect to the second paragraph of Section 2 (d), it was interpreted by this court in *Cook, Com. of Rev.* v. *Southwest Hotels, Inc.*, 213 Ark. 140, 209 S. W. 2d 469 (1949):

"It cannot be doubted that under § 2 (d) of Act 386 one who withdraws merchandise or commodities from his commercial establishment or stockpile, or who reserves it for personal use, is chargeable with the two per cent tax."

It is our holding that Georgia Pacific is liable for the sales tas.

*Use Tax.* The Arkansas Compensating Tax Act of 1941 has no provision even remotely resembling the "withdrawal for use" provision contained in the sales tax act. Ark. Stat. Ann. § 84-3105 imposes a tax on articles purchased for use, storage, or consumption within this State. Throughout the Act, the words, "sales," "sales price," and "purchase," are used to predicate the taxing of the use of the articles purchased for use, storage, or consumption.

Since there are no express words in the Use Tax Act which would justify the imposition of the tax on "withdrawals for use," it is our duty to resolve the question in favor of the taxpayer. See *U-Drive-Em Service Co., Inc.* v. *Hardin, Commissioner of Revenues,* 205 Ark. 501, 169 S. W. 2d 584 (1943).

This case is distinguishable from *Republic Steel* v. *McCastlain,* 240 Ark. 979, 403 S. W. 2d 90 (1966). In that case, Republic shipped reinforcing steel bars from its manufacturing plant in Chicago to Arkansas. Here, Republic processed the bars into a finished product and used them in building certain improvements for the United States Government under a construction contract held by Republic Steel. The opinion emphasizes the fact that Republic was acting in two separate and distinct capacities—as a manufacturer, it made the steel bars; as a contractor, it used them to perform its contract. As a manufacturer, Republic transferred its title in the steel bars to itself or its agent in the capacity of a contractor.

In this case, there was no dual capacity transaction. This was strictly a situation in which Georgia Pacific, for example, desired to remodel some offices in Crossett. In Oregon it owns a plant where panelling is manufactured. Georgia Pacific sent for a quantity of panelling and installed it in its offices. There the transaction ended. In this situation we hold Georgia Pacific is not liable for the use tax.

Affirmed in part and reversed in part.

FOGLEMAN and BYRD, JJ., would reverse as to both sales tax and use tax.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent from that part of the majority opinion affirming the lower court on the assessment of sales or gross receipts tax. It seems obvious to me that there must be a transfer of title or possession before there is a tax.

In sustaining this tax, the majority rely upon a statement from *Cook* v. *Southwest Hotels, Inc.,* 213 Ark. 140, 209 S. W. 2d 469, admitted by appellee in its brief to be dictum. It is interesting to note that in this case holding that hotels were not liable for the tax on food consumed by employees, the court said that tax liabilities do not spring from inexact language, nor do they attach by construction,—rules that the majority is overlooking.

On the contrary, a reading of the statutes indicates that no tax was imposed upon a transaction such as this. Ark. Stat. Ann § 84-1903 (Repl. 1960), provides: "There is hereby levied an excise tax of three per centum (3%) upon the gross proceeds or gross receipts derived from all sales to any person * * *". Obviously the tax is clearly upon gross proceeds from sales. But these words are defined in the statute (quoted only insofar as applicable here):

> "84-1902. Definitions.—The following words and phrases shall, except where the context clearly indicates a different meaning, have, when used in this act [§§ 84-1901—84-1904, 84-1906—84-1919], the following meanings:
>
> (a) Person: The term 'person' includes any individual, company, partnership, joint venture, and joint agreement, association (mutual or otherwise), corporation, estate, trust, business trust, receiver, or trustee appointed by any State or Federal Court or otherwise, syndicate, this State, any county, city, municipality, school district, or any other political subdivision of the State or group or combination acting as a unit, in the plural or singular number.
>
> \* \* \*
>
> (c) Sale: The term 'sale' is hereby declared to mean the transfer of either the title or possession, except in the case of leases or rentals, for a valuable consideration of tangible personal property, regardless of the manner, method, instrumentality, or de-

vice by which such transfer is accomplished. The term 'sale' is also declared to include the exchange, barter, lease, or rental of tangible personal property. [Supp. 1965.]

(d) Gross Receipts—Gross Proceeds: The term 'gross receipts' or 'gross proceeds' means the total amount of consideration for the sale of tangible personal property and such services as are herein specifically provided for, whether the consideration is in money or otherwise, without any deduction therefrom on account of the cost of the property sold, labor service performed, interest paid, losses or any expenses whatsoever.

The term 'gross proceeds' or 'gross receipts' shall include the value of any good, wares, merchandise, or property withdrawn or used from the established business or from the stock in trade of the established reserves for consumption or use in such business or by any other person.''

This clearly indicates that the tax is levied only upon the gross proceeds *from sales to persons.* When the definition of gross proceeds or gross receipts is read into the section levying the tax, one cannot read out the words following—''derived from all sales to any person''—nor can one department of the same corporation as the seller qualify as a ''person''. Consequently, there can be no tax where there is no transfer of either the title or possession of the property involved. If the legislature had intended the effect given by the majority, then they would have changed the definition of the word ''sale'' to cover this transaction.

While it might be argued that the literal application of the terms of the act make it ambiguous, this favors the taxpayer, not the taxing authority.

This tax, like the former inheritance tax, is an excise tax or privilege tax. *Hardin* v. *Vestal,* 204 Ark. 492,

162 S.W. 2d 923. As such it is a special tax. *McDaniel* v. *Byrkett*, 120 Ark. 295, 179 S.W. 491. The laws imposing such a tax are to be construed strictly against the government and in favor of the taxpayer. *McDaniel* v. *Byrkett, supra; McCain* v. *Crossett Lbr. Co.*, 206 Ark. 51, 174 S. W. 2d 114; *Scurlock* v. *City of Springdale*, 224 Ark. 408, 273 S. W. 2d 551. Tax acts are to be construed most strongly against the sovereign and most liberally in the taxpayer's favor. *Thompson* v. *Chadwick*, 221 Ark. 720, 255 S. W. 2d 687.

A tax cannot be imposed except by express words indicating the purpose to do so. *Wiseman* v. *Arkansas Utilities Co.*, 191 Ark. 854, 88 S. W. 2d 81; *Cook* v. *Ark. Missouri Power Corp.*, 209 Ark. 750, 192 S.W. 2d 210; *Cook* v. *Ayers*, 214 Ark. 308, 215 S. W. 2d 705; *Commissioner of Revenues* v. *Arkansas State Highway Comm.*, 232 Ark. 255, 337 S.W. 2d 665; *Cheney* v. *Tolliver*, 234 Ark. 973, 356 S.W. 2d 636. The express purpose to tax must be so clear that no reasonable mind should conclude the intent was otherwise. *Cook* v. *Southwest Hotels*, 213 Ark. 140, 209 S.W. 2d 469.

Where there is *any* ambiguity or *doubt* it *must* be resolved in favor of the taxpayer and against the taxing power. *Wiseman* v. *Arkansas Utilities Co.*, 191 Ark. 854, 88 S. W. 2d 81; *McCain* v. *Crossett Lumber Co.*, 206 Ark. 51, 174 S. W. 2d 114; *Cook* v. *Wofford*, 209 Ark. 824, 192 S.W. 2d 550; *Cook* v. *Ayers*, 214 Ark. 308, 215 S.W. 2d 705; *Commissioner of Revenues* v. *Arkansas State Highway Commission*, 232 Ark. 255, 337 S. W. 2d 665. *All* ambiguities or doubts respecting liability for the tax *must* be resolved for the taxpayer. *City of Little Rock* v. *Ark. Corporation Commission*, 209 Ark. 18, 19 S.W. 2d 382; *Moses* v. *McLeod*, 207 Ark. 252, 180 S. W. 2d 110.

Even if the general assembly intended to do what the majority says they did, we cannot say so unless we can say that their language necessarily leads to that conclusion. *Hardin* v. *Ft. Smith, Couch & Bedding Co.*, 202 Ark. 814, 152 S. W. 2d 1015. The courts are not at liberty to imply a meaning to a tax act which is not clearly

stated. *Scurlock* v. *City of Springdale*, 224 Ark. 408, 273 S.W. 2d 551. As was said by this court in *McLeod* v. *Commercial National Bank of Little Rock*, 206 Ark. 1086, 178 S.W. 2d 496:

> "If it be thought that, at most, the legislative purpose as expressed by the words employed is ambiguous, still the holding must be adverse to appellant because doubt in such cases is invariably resolved in favor of the taxpayer."

These rules were applied in holding that the rental of automobiles was not subject to this tax, the transfer of possession not being exclusive but only temporary. *U-Drive-Em Service Co.* v. *State*, 205 Ark. 501, 169 S.W. 2d 584.

While a law should be construed to give some meaning to all its parts, if possible, the construction *must not be inconsistent* with the language used therein. *Cook* v. *Arkansas State Rice Milling Co.*, 213 Ark. 396, 210 S. W. 2d 511.

It should be noted that the legislature must have defined "gross proceeds or gross receipts from sales" as they defined "gross receipts" in order to reach the result attained by the majority, a construction inconsistent with the language of the act.

This court has expressly held that in view of the rules that tax acts are to be construed in favor of the taxpayer, we cannot read into it matters adverse to the taxpayer. *Morley* v. *Pitts*, 217 Ark. 755, 233 S. W. 2d 539. To reach the conclusion in the majority opinion it is necessary in these circumstances to either read out of § 84-1903 the words "derived from all sales to any person or read the same words into the definition of "gross proceeds" or "gross receipts". Certainly we should apply the same rule as was applied on the attempt to read something into the statute.

I submit that in affirming the court as to the sales tax, the majority is giving the act a liberal construction in favor of the taxing power, is resolving ambiguities against the taxpayer, is reaching a conclusion to which the language of the legislature does not necessarily lead, and reading words out of the literal terms of the act. I would reverse the decree of the trial court on both taxes.

I am authorized to state that Byrd, J., joins in this dissent.